Degnan Law, PLLC
David Degnan (AZ SBN 027422)
Ronald Roach (AZ SBN 022662)
1212 E Osborn Road, Suite 116
Phoenix, Arizona 85014
602-266-0531
d.degnan@degnanlawaz.com
r.roach@degnanlawaz.com
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| TRUE FREIGHT LOGISTICS, LLC, an Illinois limited liability company, JOSHUA GOLDSTEIN, an individual | Case No.: 2:18-cv-01472-GMS |
| Plaintiffs, | (Assigned to the Honorable G. Murray Snow) |
| vs. | |
| GLOBALTRANZ ENTERPRISES, INC., a Delaware corporation, JANE AND JOHN DOES I-X; WHITE CORPORATIONS I-X; RED LIMITED LIABILITY COMPANIES I-X | **FIRST AMENDED COMPLAINT** |
| Defendants. | |

Plaintiff True Freight Logistics, LLC, through counsel, for its Complaint and Class Action Complaint against Defendants alleges and asserts as follows:

### PARTIES, JURISDICTION & VENUE

1.     Plaintiff True Freight Logistics, LLC ("Plaintiff" or "True Freight") is an Illinois limited liability company that provides freight management services.

2.     Plaintiff Joshua Goldstein is and has been the sole member of True Freight Logistics, LLC since its formation.

3.     Defendant GlobalTranz Enterprises, Inc. is a Delaware company and is a third-party seller of discounted transportation services.   GlobalTranz has its headquarters in Phoenix, Arizona.

4.      Defendants Jane Does, White Corporations, and Red Limited Liability Corporations represent those individuals whose names are not yet known but may become known through discovery.  Plaintiff reserves the right to supplement to add the name of others that could be liable upon learning about the same.

5.      As GlobalTranz is domiciled and engaged in acts in Maricopa County, Arizona out of which this case arises, jurisdiction and venue are proper in the U.S. District Court for the District of Arizona.  In addition, GlobalTranz's contracts that give rise to this Complaint include a forum selection clause requiring any litigation to be filed in Arizona.

## CLASS ACTION ALLEGATIONS

6.      Plaintiffs bring this action as a Class Action pursuant to Rules 23 of the Federal Rules of Civil Procedure on behalf of all persons or entities who are or were parties to an Agent Services Agreement with GlobalTranz between 2014 and 2018.

7.      The Class consists of hundreds of individuals or companies located throughout the United States, thus the members of the Class are so numerous that joinder of all Class members is impracticable.  The exact number of Class members is not presently known to Plaintiff but can readily be determined by appropriate discovery.

8.      Plaintiff will fairly and adequately protect the interests of members of the Class and has retained competent counsel experienced in class action litigation. Plaintiff has no interests that are adverse or antagonistic to those of the Class as it relates to the issues presented herein.

9.      A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Because the damages suffered by many individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to individually seek redress for the wrongful conduct alleged herein.

10.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.    Whether GlobalTranz breached its Agent Services Agreements with Plaintiff and members of the Class by (i) making improper deductions from and charges against commissions owed to Plaintiff and members of the Class; (ii) failing to fairly reimburse Plaintiff and members of the Class for sums that GlobalTranz charged against their bad debt accounts (but ultimately collected from customers); and (iii) failing to provide Plaintiff and members of the Class a reasonable opportunity to recover "Rep Liability" deductions; and (iv) failing to reimburse members of the Class certain credit card charges.

b.    Whether GlobalTranz breached the implied covenant of good faith and fair dealing owed to Plaintiff and members of the Class by (i) making improper deductions from and charges against commissions owed to Plaintiff and members of the Class; (ii) failing to fairly reimburse Plaintiff and members of the Class for sums that GlobalTranz charged against their bad debt accounts (but ultimately collected from customers); (iii) failing to provide Plaintiff and members of the Class a reasonable opportunity to recover "Rep Liability" deductions; (iv) failing to reimburse members of the Class certain credit card charges; and (v) diverting traffic from Class members' websites.

c.    Whether the noncompete language of GlobalTranz's Agent Services Agreements is valid and enforceable.

d.    Whether Plaintiff and members of the Class have sustained injury by reason of GlobalTranz's actions and omissions.

11.    Plaintiff envisions no difficulty in the management of this litigation as a Class Action.

## GENERAL ALLEGATIONS

### Allegations Applicable to the Entire Class

12.    GlobalTranz is a full-service transportation and logistics provider.  As part of its business, GlobalTranz seeks to enter into agreements with independent freight agents tasked with bringing customers to GlobalTranz.

13.    In soliciting potential independent freight agents, GlobalTranz represents that for agents choosing to join GlobalTranz, "growth is unlimited":

> **Fuel Your Business. Fueled By GlobalTranz.**
> Join GlobalTranz as an independent freight agent and take your business—and your earning potential—to the next level. With a full-suite of transportation services and logistics solutions, access to industry-leading technology and sales, marketing, and back-office support, your opportunity for growth is unlimited. Become a GlobalTranz independent freight agent and experience personal success building your own business and shaping the future of freight.

### The Agent Services Agreement

14.    Since at least 2009, GlobalTranz has required each of its independent freight agents, also called Business Development Companies, to enter into an Agent Services Agreement to govern the terms of the parties' relationships.

15.    GlobalTranz's Agent Services Agreements are form contracts prepared by GlobalTranz and are occasionally subject to modification by separate Addendums executed by GlobalTranz and the agent.

16.    In each Agent Service Agreement, GlobalTranz retains a person/entity (called a Business Development Company or "BDC") to market GlobalTranz's services in exchange for a commission calculated pursuant to "Gross Margin Splits" set out in Exhibit A to the Agent Services Agreement less any applicable fees.

17.    GlobalTranz's form Agent Services Agreement also purports to prohibits any agent/BDC, during the term of the Agent Services Agreement and for a period of one (1) year after its expiration or termination, from providing any business development and management services like those provided under the Agent Services Agreement to any Customer or Prospective Customer (as defined in the contract) with

whom the agent/BDC had contacts or dealings with in providing services under the Agent Services Agreement unless GlobalTranz is a party.

18.     GlobalTranz internally applies uniform accounting and bookkeeping policies, practices, procedures, and standards to determine the commissions and reimbursements, if any, due to each agent/BDC.

<u>Improper Re-bill Deductions</u>

19.     Section 2 to Exhibit A to the Agent Services Agreement provides:

> Re-bill fees will include a ten-dollar ($10) charge to the Customer for each corrected invoice sent from the carrier, and a five-dollar ($5.00) charge to BDC. BDC will be refunded an amount according to BDC's split amount as set forth under this Agreement once Customer pays such re-bill fee. Re-bill fees will be charged unless it is deemed that the fault lies with GTZ for the initial error. Re-bills under twenty-five dollars ($25) may not be disputed by the BDC, and BDC will have the option to split liability with GTZ should BDC decide against passing of re-bills under twenty-five dollars ($25) to GTZ's Customer. Re-bill and dispute procedures are available at BDC's request.

20.     Pursuant to the third sentence of Section 2, re-bill fees were not to be charged if GlobalTranz was at fault for the initial error.

21.     Since at least 2009, GlobalTranz has continuously ignored this and repeatedly deducted this fee from the earnings of Plaintiff and other members of the Class regardless of GlobalTranz's fault for creating the initial error.

22.     Section 2 also prevents agents or BDCs from disputing any re-bills under $25 but gives the BDC the option to split liability with GlobalTranz if the BDC decides not to pass the rebill through to its customer.

23.     However, since at least 2009, GlobalTranz routinely failed to disclose to Plaintiff and other members of the Class re-bills that were supposedly under $25.

24.     Instead, Plaintiff and other BDC's automatically receive(d) a deduction from their earnings based on splitting liability with GlobalTranz without providing any ability for the BDC to examine the cause of the error and determine whether to pass the charge through to the customer.

Unreimbursed "Bad Debt"

25.     Section 4 to Exhibit A to the Agent Services Agreement provides:

Bad debt reserve will be withheld from BDC earnings in an amount equal to one percent (1%) of total Gross Revenue per Applicable Period. Customer invoices not paid within one hundred and twenty (120) days of the invoice date or invoices deemed uncollectable will be written off to bad debt, and BDC Gross Margin Splits will be reimbursed back to [GlobalTranz].  Only the cost of such invoice will be offset against this fund.  In the event [GlobalTranz] recovers any such bad debt from the Customer before the end of the year, an amount equal to the recovered cost will be placed back in the fund.  Any amount left in the fund at the end of the calendar year will be reimbursed to BDC within the first quarter of the following calendar year.  However, in the event that BDC signs this Agreement and starts generating revenue after July 1st, any reimbursement of the 1% fund amount will be reimbursed in the following calendar year, eighteen (18) months later within the first quarter.  This applies only to those agreements signed after July 1st in the initial year.

26.     Traditionally, pursuant to each of the Agent Services Agreements, if an invoice went unpaid for 120 days, the amount of the invoice was written off and charged against the agent/BDC's bad debt account, but, those amounts were reimbursed to Plaintiff if the customer eventually repaid the invoice.

27.     Indeed, since 2010, agents or BDCs, including Plaintiff, had their bad debt deductions reimbursed by GlobalTranz if GlobalTranz recovered sums owed on outstanding invoices without restriction.

28.     However, GlobalTranz often did not proactively make such reimbursements.  Consequently, agents or BDCs, including Plaintiff, – after learning that specific invoices were recovered by GlobalTranz – were forced to raise the issue with GlobalTranz to obtain reimbursement, which reimbursement would then be made without restriction.

29.     Upon information and belief, because agents/BDCs may not be aware that an invoice was collected and they did not request reimbursement and GlobalTranz did not effectuate the reimbursement automatically, many times, agents/BDC are not reimbursed.

30.     In 2016, due to a policy change and new leadership, GlobalTranz began double-collecting on "bad debt," invoices that were not timely paid by customers.

31.     At the same time, GlobalTranz began an aggressive campaign of collecting unpaid invoices from their customers but stopped reimbursing Plaintiff for the bad debt that it was charged.

32.     Thus, GlobalTranz collected on invoices twice in breach of its contractual agreements and the duty of good faith and fair dealing.

33.     GlobalTranz's conduct also led to customer relations problems for Plaintiff and presumably other Class members because in some instances Plaintiff and/or other Class members had represented to their respective customers that they had taken care of their past due invoices only to have GlobalTranz belatedly pursue the customer for invoices already paid by as "bad debt."

<u>Re-direction of Web Traffic</u>

34.     In or about 2014, GlobalTranz implemented a new online management platform that instructed customers to begin logging in through GlobalTranz's website.

35.     GlobalTranz's new program was designed intentionally to eliminate the need for customers to visit True Freight Logistics LLC's webpages or the webpages of other Class members to take advantage of GlobalTranz's services.

36.     Upon information and belief, this new program was implemented to increase customer dependence on GlobalTranz to the exclusion of the agent that brought the customer to GlobalTranz in the first place.

37.     Upon information and belief, this program also was meant to circumvent any client/customer relationship with the agent to avoid the loss of business/customers in the event any agency ended.

38.     In violation of the representations made to Plaintiff and other members of the Class that agents/BDCs business relationships with their customers would not be  infringed  by  having  customers  directed  to  any  other  website  besides

www.truefreight.com, GlobalTranz's new platform and instructions has substantially diminished web traffic Plaintiff and presumably other class members' webpages.

39.     Although GlobalTranz President, Marty Sinicrope, apologized and said that GlobalTranz's development team that was looking into possible solutions that could be deployed, no solution was ever deployed.

<u>Other Accounting Irregularities and Failures</u>

40.     Other accounting irregularities and failures, including the failure to make required credit card surcharge reimbursements and the failure to provide Plaintiff and members of the Class a reasonable opportunity to recover "Rep Liability" deductions also affected and damaged Plaintiff and other Class members.

**Plaintiff's Relationship with GlobalTranz**

41.     Plaintiff became one of GlobalTranz's independent freight agents by executing an Agent Services Agreement in 2009, shortly after Plaintiff was formed by Goldstein.

42.     Goldstein signed the 2009 contract as 100% owner of True Freight Logistics, LLC.

43.     Plaintiff and GlobalTranz entered into renewal contracts in 2012 and 2014.

44.     Over the course of the parties' relationship, Plaintiff and GlobalTranz worked together to generate millions in profits.

45.     However, over the last couple of years, the parties' relationship began to sour as GlobalTranz began engaging in a pattern of activity seemingly designed to cut Plaintiff (and other members of the Class) out of the picture and deprive Plaintiff (and other members of the Class) of funds to which it was entitled.

46.     Even more troubling, GlobalTranz began secretly negotiating with one of Plaintiff's sales agents and, upon information and belief, assisted him, in violation

of GlobalTranz's contractual duties, to start his own independent agency with GlobalTranz and usurp customers and profits from Plaintiff.

47.    Ultimately, GlobalTranz wrongfully and prematurely terminated its current contract with Plaintiff, costing Plaintiff millions of dollars in damages in the form of lost commissions, profits, and reputational damage.

<u>GlobalTranz's Improper Credit Hold and Side Deal</u>

48.    During the 2012 contract, one of Plaintiff's customers failed to pay its invoice.  As a result, GlobalTranz put a "credit hold" on the customer's account.

49.    GlobalTranz's credit hold prevented Plaintiff from doing continued business with its customer until all unpaid invoices were paid in full.

50.    Ultimately, GlobalTranz charged True Freight Logistics LLC's account for the unpaid invoice, but the credit hold remained.

51.    After Plaintiff paid, GlobalTranz refused to release credit hold so that True Freight Logistics could work with its customer.

52.    Notwithstanding that the credit hold against Plaintiff, even though the customer never paid its invoice, the customer started shipping again with GlobalTranz by going through a different representative.

53.    Plaintiff was unaware of this side deal.

54.    Plaintiff should have shared but was wrongfully deprived of the profits from that account.

<u>True Freight's Third Agent Services Agreement with GlobalTranz</u>

55.    On or about October 27, 2014, Plaintiff and GlobalTranz entered into a third Agent Services Agreement, which was prepared by GlobalTranz (the "2014 True Freight ASA").

56.    Section 2.22 defines "Material Breach" to include:

(a) the failure of [True Freight] to make the required payments under this Agreement; (b), the failure of [True Freight] to perform under this Agreement or exposing [GlobalTranz] to liability  . . .; (c) the filing of a

9

petition in bankruptcy court by [True Freight]; (d) [GlobalTranz's] reasonable belief that [True Freight] has committed a violation of Paragraph 8 (Representations and Warranties), 9 (Trademarks, Copyrights and Proprietary Information), 10 (Confidentiality), 11 (Solicitation of Personnel, Customers and/or Prospective Customers), 13 (Insurance), 16 (Conduct, Independent Status, and Benefits), and/or 17 (Assignment) of this Agreement; (e) [True Freight Logistics, LLC's] entering into a transaction in which there is an actual, potential, or perceived conflict of interest; or [True Freight's], or any of [True Freight's] Agent's, indictment or conviction of a felony.

57.     Section 5 required Plaintiff to provide a list of its agents on a particular "Agent Status Form" in order for the agents to access GlobalTranz' online platform and required Plaintiff to immediately notify GlobalTranz of any access changes within its organization via an updated status form.

58.     Upon information and belief, based on the facts alleged below regarding what GlobalTranz allowed to occur, at all material times, GlobalTranz lacked sufficient internal controls to verify and/or ensure that any changes regarding Plaintiff's agents and/or account were legitimate and approved by Plaintiff.

59.     Section 11.1.1 prohibits GlobalTranz during the term of the Agent Services Agreement and for a period of one (1) year after its expiration or termination from soliciting any of Plaintiff's employees known to GlobalTranz as a result of the Agent Services Agreement and/or GlobalTranz's relationship with Plaintiff to leave his/her employment with Plaintiff in order to be engaged (whether an employee, contractor, vendor, or otherwise) by GlobalTranz or any third party.

60.     The 2014 True Freight ASA was modified by an Addendum to the Services Agreement (the "Addendum"), which was also entered into effective October 27, 2014.

61.     Pursuant to the Addendum, the 2014 True Freight ASA was to run for a term of five (5) years.

62.     The Addendum also modified the 2014 True Freight ASA's Confidentiality provision to acknowledge that Plaintiff's proprietary information

constitute valuable trade secrets and GlobalTranz agreed not to use, disclose, or reveal any of Plaintiff's confidential information to any individual or entity during the term of the contract or anytime thereafter.

63.    The Addendum also modified the 2014 True Freight ASA's non-solicitation provision.  However, the provision did not apply to any of Plaintiff's existing customers identified in Exhibit D to the contract or if GlobalTranz materially breached the 2014 True Freight ASA and the agreement was terminated.

64.    The Addendum also modified the 2014 True Freight ASA's termination provisions to provide that neither party could terminate the agreement absent a material breach that was not cured within fifteen (15) days after written notice of the breach.

65.    Joshua Goldstein executed the True Freight Agent Services Agreement as the owner of Plaintiff.

<u>Plaintiff Threatens a Lawsuit and GlobalTranz Retaliates</u>

66.    In mid-2017, Plaintiff threatened to file a lawsuit for breach of contract for the credit hold and theft of a high valued customer of Plaintiff described above, which cost Plaintiff thousands of dollars and potentially tens of thousands in future earnings.

67.    Then, in August 2017, GlobalTranz improperly changed GlobalTranz's internal records to reflect that one Plaintiff's contractor agents, Micha Leinwand, was a fifty percent (50%) owner of Plaintiff. This change was made without Goldstein's consent or approval and conducted without his knowledge.

68.    Upon information and belief, GlobalTranz made the unauthorized change in retaliation for Goldstein's threatened lawsuit on behalf of Plaintiff.

69.    In December 2017, Plaintiff learned that Leinwand, of Plaintiff's contractors and agents who helped connect customers to GlobalTranz, intended to end

his relationship with Plaintiff and start his own company that would also work with GlobalTranz.

70.     On or about December 13, 2017, Goldstein, on behalf of Plaintiff, emailed GlobalTranz's Director of Agent Operations, Kayla Doherty, advising her of the departure and instructing her to ensure that no one could transfer True Freight Logistics LLC's accounts or do anything that required changes to True Freight Logistics LLC's agency unless written permission was provided by Goldstein.

71.     Goldstein then reviewed email correspondence between GlobalTranz and was astonished to discover that GlobalTranz's Doherty and Leinwand had been having secret communications spanning several months about Leinwand severing ties with Plaintiff, taking all the customer accounts he had developed while with Plaintiff, and starting his own independent agency in partnership with GlobalTranz.

72.     On December 22, 2017, GlobalTranz's former Contract Administrator and current Vice President of Purchasing sent an email to Goldstein in which she indicated that she believed (incorrectly) Leinwand was a co-owner of Plaintiff.

73.     At no time had Josh Goldstein been informed that his sales agent was holding himself out as a co-owner of True Freight Logistics, LLC.

74.     At no time had Josh Goldstein ever authorized or submitted any paperwork to GlobalTranz indicating that Micha Leinwand had any ownership interest in Plaintiff, a limited liability company.

75.     Goldstein then supplied GlobalTranz's General Counsel, Jeffrey Simmons, with records demonstrating Goldstein was, is, and always has been the only member (owner) of Plaintiff.

76.     In response GlobalTranz indicated that it would maintain a "status quo" until an agreement was reached, or a court order was obtained.

77.     However, the status quo maintained by GlobalTranz continued to improperly identify Leinwand as a co-owner of Plaintiff.

78.     Despite Goldstein's repeated requests, GlobalTranz refused to do anything to correct its internal records or prevent Leinwand from stealing Plaintiff's customers.

79.     To the contrary, in early 2018, all of Plaintiff's customer accounts with GlobalTranz, including, but not limited to the accounts associated with Plaintiff's agent, Leinwand, were improperly and without authorization transferred to Leinwand's new agency account in breach of the 2014 True Freight ASA.

80.     In violation of GlobalTranz's own Rules of Engagement and in complete disregard of the corporate form of True Freight Logistics, LLC, GlobalTranz not only moved all of Plaintiff's account over to an agency controlled by Lienwand, GlobalTranz did so before even terminating the 2014 True Freight ASA.

81.     On February 7, 2018, GlobalTranz sent a letter to Goldstein purporting to terminate the 2014 True Freight ASA.

82.     GlobalTranz alleged that Plaintiff had materially breached the 2014 True Freight ASA and "failed to perform its contractual duties by engaging in intolerable conduct making any continued business relationship . . . impossible."

83.     GlobalTranz alleged without any basis that such conduct was incurable.

84.     GlobalTranz alleged that Goldstein had engaged in unprofessional and unconscionable conduct because of "voluminous, targeted, and harassing communications" directed toward them.

85.     At no time before sending the termination letter had GlobalTranz ever raised such an issue or asked Goldstein or Plaintiff to in any way change its behavior toward GlobalTranz and/or its employees.

86.     GlobalTranz's termination of the 2014 True Freight ASA was wrongful, retaliatory, and constitutes an anticipatory repudiation of the 2014 True Freight ASA.

87.    Plaintiff was extremely successful in directing its client customers to GlobalTranz for their shipping needs, producing over $18 million in revenue and over $3.5 million in profits over the years.

88.    In the last year alone, Plaintiff produced over $3,198,000 in revenue and over $573,000 in profits for GlobalTranz.

89.    By improperly terminating the 2014 True Freight ASA, depriving Plaintiff of its earned commissions, and actively excluding it from customer relationships, GlobalTranz has caused Plaintiff substantial damages over the life of the 2014 True Freight ASA.

## COUNT ONE

### (Class Action Request for Declaratory Relief)

90.    The above is repeated as if fully set forth herein.

91.    This claim is brought pursuant to 28 U.S. Code § 2201(a) and Rule 57, Federal Rules of Civil Procedure.

92.    The facts recited in this First Amended Complaint identify a justifiable controversy concerning the protectable interests and legal rights of the parties that stem from a contract between adverse parties, which grants the Court with the power to determine the parties' rights as they relate to GlobalTranz's Agent Sales Agreement.

93.    The Class is entitled to a judicial determination of the parties' respective rights, status, and obligations pursuant to the Contract and related documents, including, but not limited to declarations that the Agent Services Agreement's nonsolicitation provisions purporting to restrict agents/BDCs are void and unenforceable.

94.    This controversy will continue until resolved by a court of competent jurisdiction.

95.    Plaintiffs are entitled to recover its costs and attorneys' fees incurred herein pursuant to A.R.S. §§ 12-1840,12-341, and 12-341.01.

## COUNT TWO

### (Class Action Claim for Breach of Contract)

96.    The above is repeated as if fully set forth herein.

97.    The Agent Services Agreements between GlobalTranz and its agents/BDCs are and were valid agreements.

98.    Plaintiff and other Class members fully performed under the Agent Services Agreement and/or was excused from performance based on GlobalTranz's material breaches of those contracts.

99.    GlobalTranz materially breached its Agent Services Agreement with Plaintiff and other Class members by (i) making improper deductions from and charges against commissions owed to Plaintiff and members of the Class; (ii) failing to fairly reimburse Plaintiff and members of the Class for sums that GlobalTranz charged against their bad debt accounts (but ultimately collected from customers); and (iii) failing to provide Plaintiff and members of the Class a reasonable opportunity to recover "Rep Liability" deductions; and (iv) failing to reimburse members of the Class certain credit card charges.

100.    As a direct and proximate result of GlobalTranz's breaches of the Agent Services Agreement, Plaintiff and other members of the Class have been damaged in an amount to be proven at trial.

101.    Plaintiffs are entitled to recover its costs and attorneys' fees incurred - herein pursuant to A.R.S. §§ 12-1840,12-341, and 12-341.01.

## COUNT THREE

### (Class Action Claim for Breach of the Implied Covenant of
### Good Faith and Fair Dealing)

102.    The above is repeated as if fully set forth herein.

15

103.    The Agent Services Agreement imposed upon GlobalTranz the covenant of good faith and fair dealing, which required GlobalTranz not to act in such a way as to deprive Plaintiff or any member of the Class of their benefit in the Agent Services Agreement.

104.    GlobalTranz breached the covenant of good faith and fair dealing by (i) making improper deductions from and charges against commissions owed to Plaintiff and members of the Class; (ii) failing to fairly reimburse Plaintiff and members of the Class for sums that GlobalTranz charged against their bad debt accounts (but ultimately collected from customers); and (iii) failing to provide Plaintiff and members of the Class a reasonable opportunity to recover "Rep Liability" deductions; (iv) failing to reimburse members of the Class certain credit card charges; and (v) improperly directing Plaintiff's and Class Members' clients directly to GlobalTranz's website so as to bypass their websites entirely.

105.    As a direct and proximate result of GlobalTranz's breaches of the implied covenant of good faith and fair dealing, Plaintiff and other Class members have been damaged in an amount to be proven at trial.

106.    Because GlobalTranz acted deliberately and/or with indifference as to the harm it would cause Plaintiff and other Class Members, GlobalTranz is liable for punitive damages.

107.    Plaintiffs are entitled to recover its costs and attorneys' fees incurred - herein pursuant to A.R.S. §§ 12-1840,12-341, and 12-341.01.

## COUNT FOUR

### (True Freight's Separate Request for Declaratory Judgment)

108.    The above is repeated as if fully set forth herein.

109.    This claim is brought pursuant to 28 U.S. Code § 2201(a) and Rule 57, Federal Rules of Civil Procedure.

110.   The parties to the 2014 True Freight ASA dispute whether it was properly terminated and whether GlobalTranz violated its nonsolicitation obligations when it secretly communicated with Micah Lienwand and allowed him to create his own agency and take clients from Plaintiff's account.

111.   The facts recited in this First Amended Complaint identify a justifiable controversy concerning the protectable interests and legal rights of the parties that stem from a contract between adverse parties, which grants the Court with the power to determine Plaintiff's rights as they relate to the 2014 True Freight ASA.

112.   Plaintiffs is entitled to a judicial determination of the parties' respective rights, status, and obligations pursuant to the 2014 True Freight ASA and related documents, including, but not limited to declarations that (i) GlobalTranz anticipatorily repudiated and materially breached the 2014 True Freight ASA and (ii) GlobalTranz breached the 2014 True Freight ASA's nonsolicitation provision.

113.   This controversy will continue until resolved by a court of competent jurisdiction.

114.   Plaintiff is entitled to recover its costs and attorneys' fees incurred herein pursuant to A.R.S. §§ 12-1840,12-341, and 12-341.01.

## COUNT FIVE

### (True Freight's Separate Claim for Breach of Contract)

115.   The above is repeated as if fully set forth herein.

116.   The 2014 True Freight ASA and Addendum were valid agreements.

117.   True Freight Logistics, LLC fully performed under its Agent Services Agreements with GlobalTranz and/or was excused from performance based on GlobalTranz's material breaches of those contracts.

118.   GlobalTranz materially breached the 2014 True Freight ASA by (i) anticipatorily repudiating and terminating the agreement without sufficient justification, (ii) soliciting one of Plaintiff's agents to enter into an independent

agency agreement with GlobalTranz; (iii) making unauthorized changes to Plaintiff's account and access permissions; (iv) entering into separate arrangements with customers purportedly put on holds; and (v) improperly assigning True Freight Logistics, LLC's customer accounts to a competing agency.

119.    As a direct and proximate result of GlobalTranz's breaches of the Agent Services Agreement, Plaintiff has been damaged in an amount to be proven at trial.

120.    Plaintiff is entitled to recover its costs and attorneys' fees incurred - herein pursuant to A.R.S. §§ 12-1840,12-341, and 12-341.01.

## COUNT SIX

### (True Freight's Separate Claim for Breach of the Implied Covenant
### of Good Faith and Fair Dealing)

121.    The above is repeated as if fully set forth herein.

122.    Pursuant to Arizona law, the Agent Services Agreement imposed upon GlobalTranz the covenant of good faith and fair dealing, which required GlobalTranz not to act in such a way as to deprive Plaintiffs of their benefit in the Agent Services Agreement.

123.    GlobalTranz breached the covenant of good faith and fair dealing by (i) anticipatorily repudiating and terminating the agreement without sufficient justification, (ii) soliciting one of Plaintiff's agents to enter into an independent agency agreement with GlobalTranz; (iii) making unauthorized changes to Plaintiff's account and access permissions; and (iv) improperly assigning Plaintiff's customer accounts to a competing agency.

124.    As a direct and proximate result of GlobalTranz's breaches of the implied covenant of good faith and fair dealing, Plaintiff has been damaged in an amount to be proven at trial.

125.    Because GlobalTranz acted deliberately and/or with indifference as to the harm it would cause Plaintiff, GlobalTranz is liable for punitive damages.

126.    Plaintiff is entitled to recover its costs and attorneys' fees incurred herein pursuant to A.R.S. §§ 12-1840,12-341, and 12-341.01.

## COUNT SEVEN

## (True Freight's Separate Claim for Tortious Interference with Business Relations and Prospective Economic Advantage)

127.    The above is repeated as if fully set forth herein.

128.    GlobalTranz was aware that Plaintiff was involved in the freight business and had numerous customers to which it provided freight solutions, many of which were directed to GlobalTranz and enabled GlobalTranz to profit.

129.    GlobalTranz was aware of the entities with whom Plaintiff did business because they were assigned to Plaintiff's account for purposes of paying commissions.

130.    Based on Plaintiff's ongoing business relationships with its customers, it expected continued economic benefit and advantage from the continuance of the relationship.

131.    GlobalTranz intentionally and with full knowledge of the ongoing freight business being conducted by Plaintiff engaged in conduct intended to disrupt the business relationship between Plaintiff and its clients by, among other things, introducing a management platform that improperly instructed customers to log in directly through GlobalTranz's website and bypass Plaintiff's website entirely, belatedly pursuing past invoices after charging Plaintiff's bad debt account, placing customers unnecessarily on credit holds, and improperly transferring their accounts to another competing agency.

132.    GlobalTranz's conduct described herein has interfered with Plaintiff's business with respect to each and every customer that Plaintiff brought to GlobalTranz.

133.    Based on True Freight Logistics ongoing business relationships with its customers it was reasonably probable that Plaintiff would have received the anticipated economic benefit and advantage in the absence of GlobalTranz's interference.

134.    As a direct and proximate cause of GlobalTranz's intentional interference with Plaintiff's business, Plaintiff is and continues to be damaged in an amount to be proven at trial.

135.    Because GlobalTranz acted deliberately and/or with indifference as to the harm it would cause Plaintiff, GlobalTranz is liable for punitive damages.

136.    Plaintiff is entitled to recover their attorneys' fees and costs pursuant A.R.S. §§ 12-341 and 12-341.01.

## COUNT EIGHT

### (True Freight's Separate Claim for Accounting)

137.    Plaintiff repeats the above as if fully set forth herein.

138.    The Agent Services Agreements constituted valid contracts whereby GlobalTranz received sums from customers such that GlobalTranz owed a duty to True Freight Logistics, LLC to account to Plaintiff for monies received from customers and charged against Plaintiff's account.

139.    In response to errors discovered in such accounting, Plaintiff requested an audit of its account to ensure the accuracy of GlobalTranz's accounting, which request was improperly denied by GlobalTranz.

140.    Because of GlobalTranz's refusal to audit its accounting, Plaintiff is unable – without access to all related business records – to conduct its own audit of GlobalTranz's accounting.

141.    Therefore, GlobalTranz should be required to provide an accounting of its business and contractual relationship with Plaintiff going back six (6) years from

the date of this original Complaint in this matter filed in the Superior Court of the State of Arizona in and for Maricopa County.

142. Plaintiff is entitled to recover their attorneys' fees and costs pursuant A.R.S. §§ 12-341 and 12-341.01.

## PRAYER FOR RELIEF

Based on the foregoing, Plaintiff prays for entry of judgment as follows:

A. That this Court certify Counts One through Three of this action as a class action under Rule 23(b)(1)-(2);

B. For an award of special damages, compensatory damages, and all monetary relief authorized by law or referenced in the First Amended Complaint;

C. An award of costs and attorney's fees;

D. An award of punitive damages;

E. An award of prejudgment and post judgment interest; and

F. Such other and further relief as to the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

True Freight Logistics, LLC demands a jury trial on all claims and issues triable by jury in this matter.

DATED this 27th day of June, 2018.

DEGNAN LAW, PLLC

 /s/ David Degnan
David Degnan, Esq.
Ronald Roach, Esq.
*Attorney for Plaintiffs*

I hereby certify that on June 27, 2018
I electronically transmitted the attached
document to the Clerk's Office using the
CM/ECF system for filing and transmittal
of a Notice of Electronic Filing to the following
CM/ECT registrants:

Brad Vynalek
Eric Johnson
Benjamin Nielsen
Attorneys for Defendants


By:  /s/ Caralee Ruff