WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| True Freight Logistics LLC, et al., | No. CV-18-01472-PHX-JGZ |
| Plaintiffs, | **ORDER** |
| v. | |
| Global Tranz Enterprises Incorporated, et al., | |
| Defendants. | |
| Global Tranz Enterprises Incorporated, | |
| Counterclaimant, | |
| v. | |
| True Freight Logistics LLC, | |
| Counter-Defendant. | |

Defendant Global Tranz Enterprises, Inc. (GTZ) seeks a protective order pursuant to Fed. R. Civ. P. 26(c) regarding Plaintiff True Freight Logistics LLC's requests for production of electronically stored information (ESI).[1] (Doc. 58). Upon consideration of the parties' arguments, the Court will grant GTZ's motion in part and deny it in part.

///

---

[1] Pursuant to the procedure for resolving discovery disputes set forth in the Case Management Order (*see* Doc. 23 at 3–4), the parties initially contacted the Court and the Court held a telephonic conference on June 26, 2019 regarding the dispute. (Doc. 57.) At the telephonic conference, the Court directed the parties to brief the issue, which they have now done. (Docs. 57, 58, 59, 60.)

## BACKGROUND

Through requests for production, True Freight sought "all communications," with no subject matter limitation, between 49 different GTZ email accounts for the time period of May 2017 to February 28, 2018. (Doc. 58, Ex. A at 2; Doc. 58 Ex. A at 11–12.) After GTZ objected, True Freight narrowed its request to 33 email accounts, provided search terms, and expanded the date range to include June 12, 2012 to February 8, 2018. (Doc. 58 at 2; Doc. 58, Ex. B.) GTZ agreed to collect ESI from 14 of the 33 custodians and indicated its "preference" to limit True Freight's requested search terms.[2] (Doc. 58 at 2; Doc. 58, Ex. C at 2.) With respect to the remaining custodians, GTZ requested additional information about why each custodian was likely to be in custody of relevant information. (Doc. 58 at 2 (citing Doc. 58, Ex. C).)

In response, True Freight provided the title and/or a "generalized" description of the type of work performed by each custodian; True Freight did not explain why each individual would likely be in custody of the requested information. (Doc. 58, Ex. E at 1–2 (True Freight stating that the "description is not inclusive and not detailed. GTZ is aware of the responsibilities and interactions of the above individuals because they are/were GTZ's employees.").)

GTZ ultimately agreed to collect data from one additional custodian, bringing the total to 15. (Doc. 58 at 3.)[3] GTZ's search retrieved 4.5 GB, comprised of approximately

---

[2] The search terms include Goldstein, Josh!, 877, 10877, True Freight, or TF each in conjunction with: "bad debt" or "re bill" or re-bill" or "rebill" or deduction or fault or attitude or behavior or harass! or threat, or hostile or "credit card" or "rep liability" or reimburse or reimbursement or split or own or owner or micha or leinwand or freightguys or "freight guys" or "credit hold" or breach or sue or terminat! or lawsuit or Illinois or "status quo" or customer! or agency or commission or "Rod lien" or "operating agreement" or "modern service" or dissolve! (Doc. 58, Ex. B at 2.) Other search terms include: Micha, Leinwand, "freight guys," and "freightguys." (*Id.*)

[3] Except for John Hohman, John Hess, Marty Sinicrope, and Michael Leto, who are mentioned in the parties' briefs, it is not clear which of the other listed custodians are at issue in the instant motion. Moreover, the exact number of custodian records sought is not clear. GTZ states it has gathered data from 15 custodians, that there are 17 additional custodian accounts sought, and that 31 or 33 or 41 custodian accounts are at issue. The numbers do not add up. Consequently, the Court uses the general term "additional" custodian accounts to identify the remaining custodian accounts at issue, ie. the ones that GTZ has not agreed to provide.

13,000 documents and more than a million pages for GTZ's counsel to review for relevance and privilege. (*Id.*) GTZ's counsel has spent approximately 80 hours reviewing those documents, "is only a little more than half way through," and GTZ has produced 27,000 pages to True Freight. (*Id.*)

**DISCUSSION**

GTZ now seeks a protective order limiting production to the 15 custodians whose accounts GTZ has already searched. GTZ asserts that requiring it to collect and review documents from additional custodians is not proportionate to the needs of the case. GTZ estimates that searching for documents from the additional custodians will result in at least the same amount of data gathered from the first 15 custodians and will cost GTZ at least another $100,000 in attorneys' fees. (*Id.* at 4.) With the exception of one custodian, the Court agrees with GTZ.

Rule 26(c) allows the Court to limit discovery upon a determination that "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(c)(iii). Rule 26(b)(1) provides, in pertinent part:

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Thus, under Rule 26(b)(1), relevancy alone is not sufficient to obtain discovery—"discovery must also be proportional to the needs of the case." *In re Bard IVC Filters Prods. Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016). "[T]he Advisory Committee Note makes clear, . . . , [Rule 26(b)(1)] does not place the burden of proving proportionality on the party seeking discovery." *Id.* (quoting Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment)). "Rather, '[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes.'" *Id.* (quoting Fed. R. Civ. P. 26(b)(1) advisory committee's

note to 2015 amendment); *see also In re Bard IVC Filters Prods. Litig.,* 317 F.R.D. at 565 (considering evidence and arguments from both sides in deciding proportionality of discovery request); *Caballero v. Bodega Latina Corp.*, No. 217-CV-00236-JAD-VCF, 2017 WL 3174931, at *2 (D. Nev. July 25, 2017) ("The proportionality inquiry, thus, requires input from both sides."). The Advisory Committee further noted:

> The parties may begin discovery without a full appreciation of the factors that bear on proportionality. A party requesting discovery, for example, may have little information about the burden or expense of responding. A party requested to provide discovery may have little information about the importance of the discovery in resolving the issues as understood by the requesting party.... A party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination. A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery.

*Id.*

Having considered the parties' arguments, the Court concludes that TFL's demand for GTZ to produce documents from all of the additional custodians is not proportional to the needs of this case.

**Relevancy.** TFL asserts that the internal and external email communications of GTZ's current and former employees will provide evidence supporting TFL's contract and class claims[4] and that its discovery request is relevant and in direct proportion to establish

---

[4] TFL asserts class-action claims of breach of contract and breach of the implied covenant of good faith based on allegations that GTZ took improper deductions and made improper charges against commissions owed to TFL and class members (referred to as Business Development Companies (BDCs)); failed to make certain reimbursements including for credit card charges; and improperly redirected class members' clients to GTZ's website. (Doc. 35.) TFL's separate breach of contract and breach of the implied covenant of good faith and fair dealing claims include the additional allegations that GTZ made unauthorized changes to TFL's accounts; entered separate agreements with TFL's customers; solicited TFL agent Micah Leinwand to enter into an independent agency agreement with GTZ; and transferred TFL's accounts to Leinwand's competing agency. (*Id.*) TFL asserts a separate claim for tortious interference with business relations and economic advantage based on many of the same allegations supporting TFL's breach of contract claim. (*Id.*)

- 4 -

these claims. As noted by GTZ, however, TFL fails to explain how.

The parties' contracts, accounting records, and other business records are central to TFL's claims against GTZ concerning GTZ's billing and credit card practices, and reassignment of TFL's accounts. While communications among various GTZ employees might prove covert negotiations, there is little support for True Freight's conclusory assertion that the communications sought will "conclusively prove each and every one of True Freight's allegations." (Doc. 59 at 5.) Importantly, GTZ intends to produce documents from 15 of the requested custodian accounts. A large number of documents from those accounts have been produced and TFL states that the documents have little or no value. TFL does not refute GTZ's arguments that: the search terms are unlikely to result in documents germane to TFL's class action claims as the terms are targeted only at communications about True Freight; the additional custodians do not likely possess documents that are not also in the possession of the custodians from whom GTZ has agreed to collect; or that many of the additional custodians are or were high ranking GTZ officers who were not routinely interfacing with or about True Freight. True Freight's assertion

---

TFL identifies the following allegations as relevant to this discovery dispute:

(a) Defendant improperly terminated its Agency Services Agreement ("ASA") with True Freight without cause and without notice (as required by the ASA); (b) Defendant improperly and unilaterally changed its own internal records to reflect that one of True Freight's contractor agents, Micha Leinwand ("Leinwand"), was a 50% owner of True Freight, (which was neither true nor valid); (c) Defendant breached the ASA by having covert negotiations with Leinwand, to set up an independent agency in partnership with Defendant; (d) Defendant breached the terms of the ASA by transferring True Freight's customer accounts that Leinwand and other True Freight agents had developed *while working for True Freight,* to Leinwand's agency, even prior to terminating the ASA with True Freight; and (e) despite numerous requests by True Freight, Defendant refused to correct its internal records and actively assisted Leinwand in pilfering True Freight's customers.

(Doc. 59, pp. 2-3.)

that the remaining custodian accounts contain important information related to the issues in this case appears to be hopeful conjecture.

Although TFL "should be able to explain . . ." the importance of the information to resolving the issues, *see* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment, TFL only specifically addresses the importance of communications involving John Hohman and John Hess.[5] The Court agrees that communications sought from Hohman, GTZ's Manager of Agent Earnings Reporting, may have relevance to resolving the issues in this case. Hohman may have information about GTZ's billing and credit card practices which would pertain to some of TFL's claims. TFL fails, however, to satisfy this factor with regard to Hess, GTZ's Chief Technology Officer. Even though Hess may have knowledge of information regarding GTZ's online platform and the redirecting of BDCs' customers to GTZ's website (*see* Doc. 59 at 6), TFL does not explain how search terms pertaining to TFL would retrieve information important to resolving TFL's broad allegations that GTZ "implemented a new online management platform that instructed customers to begin logging in through [GTZ's] website . . ." in an effort "to circumvent any client/customer relationship with the [BDCs] . . . ." (Doc. 35 at ¶¶ 34, 37.) Instead, TFL faults GTZ for providing information from 15 "low-level employees that do not have access to the relevant and important information . . ." supporting TFL's claims and whose documents produced so far are "of little or no value . . . ." (Doc. 59 at 4; *see also id.* at 7–8 ("[I]t is Defendant who selected the custodians from whom they are willing to produce documents. Under this guise, Defendant will not have to produce damning communications." (emphasis omitted).)[6] Yet, TFL specifically identified these 15 "low-level" custodians in its request for production, causing GTZ to expend resources to comply

---

[5] TFL provides only conclusory assertions about the importance of the discovery sought from the remaining custodians.

[6] In light of TFL's statement, the Court is concerned that it is not worthwhile for GTZ to continue reviewing the documents retrieved from the 15 "low-level" custodians. However, the Court does not address this issue as GTZ does not request to be relieved of this production, has agreed to provide documents from these custodians, and maintains that these individuals likely possess the same documents TFL seeks from the additional custodians.

with that request.

Additionally, although some of the additional custodians are "high ranking officers . . . " (Doc. 58 at 5), TFL fails to explain how they "are directly instrumental in establishing True Freight's claims . . . ." (Doc. 59 at 5.) TFL's conclusory assertion that it "requested communications with various employees of Defendant[], who either made the decisions or were instrumental in the re-directing of website traffic; made decisions on the credit card charges; and made decisions regarding improper rebills" (Doc. 58 at 6), fails to address GTZ's arguments that "high ranking officers . . . were not routinely interfacing with or about True Freight." (Doc. 58 at 5.) Nor does TFL address GTZ's argument that former GTZ presidents Michael Leto and Marty Sinicrope, who are among the additional custodians, have not "been involved with GTZ for years." (Doc. 58 at 5–6.)

**Proportionality factors.** Requiring GTZ to provide the additional communications would result in a substantial burden and expense, including $100,000 in attorneys' fees in addition to the 80-plus hours of attorney time expended on the record review of the 15 custodians. With the exception of Hohman, True Freight fails to sufficiently establish that the remaining custodian accounts likely possesses important information bearing on the issues so as to justify that burden and expense. In light of the marginal relevance of the other custodian accounts, the anticipated cost is disproportionate, particularly in relation to the $900,000 in controversy.[7]

**The party's access to relevant information.** GTZ alone may have access to internal communications of its employees, but GTZ has provided or will provide the internal communications of 16 custodians. TFL does not dispute that records from the first 15 custodians include internal communications that would be retrieved from the additional custodians. Moreover, again, it is notable that TFL characterizes the disclosed communications as having little value.

---

[7] Other than general assertions by the parties, the record as to the parties' resources is not developed.

## CONCLUSION

Considering the factors set forth in Rule 26(b)(1), the Court concludes that, with the exception of custodian John Hohman, the burden and expense of producing the additional custodian accounts is not proportional to the needs of the case. Therefore the Court will deny GTZ's motion with regard to John Hohman and grant the motion with regard to the additional custodians at issue.

IT IS ORDERED that Global Tranz Enterprises, Inc.'s Motion for Protective Order (Doc. 58) is DENIED with respect to the custodian account of John Hohman and GRANTED with respect to the remaining custodians.

Dated this 30th day of August, 2019.

_____
Honorable Jennifer G. Zipps
United States District Judge