Quarles & Brady LLP
Firm State Bar No. 00443100
Renaissance One
Two North Central Avenue
Phoenix, AZ 85004-2391
TELEPHONE 602.229.5200

Attorneys for Defendant GlobalTranz Enterprises, Inc.

C. Bradley Vynalek (#020051)
brad.vynalek@quarles.com
Michael S. Catlett (#025238)
michael.catlett@quarles.com
Benjamin C. Nielsen (029689)
benjamin.nielsen@quarles.com

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| True Freight Logistics, LLC, an Illinois limited liability company; Joshua Goldstein, an individual,<br><br>        Plaintiffs/Counterdefendants,<br><br>vs.<br><br>GlobalTranz Enterprises, Inc., a Delaware corporation,<br><br>        Defendant/Counterclaimant. | Case No. 2:18-cv-01472-JGZ<br><br>**GLOBALTRANZ ENTERPRISES, INC.'S MOTION FOR DEFAULT JUDGMENT** |

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, along with the Court's March 4, 2020, Amended Order, Defendant GlobalTranz Enterprises, Inc. ("GlobalTranz") moves for entry of default judgment against Plaintiff True Freight Logistics, LLC ("True Freight") on Count One and Count Two of GlobalTranz's Counterclaim. This Motion is supported by the following Memorandum of Points and Authorities and the entire record in this action.

QB\62231695.1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION.

The facts alleged in GlobalTranz's August 27, 2018 Counterclaim (the "Counterclaim") [Dkt. 26.], substantiated by documentary evidence of record, conclusively establish the liability of True Freight for breach of contract and breach of the implied covenant of good faith and fair dealing, as well as the damages that GlobalTranz sustained because of True Freight's breaches. Furthermore, and as the Court has noted, True Freight has repeatedly ignored the Court's orders to obtain legal counsel and is therefore presently in default for failing to defend itself against GlobalTranz's counterclaims. GlobalTranz moves the Court to enter judgment by default as to liability in favor of GlobalTranz on Counts One and Two of the Counterclaim, and to enter an award of damages in favor of GlobalTranz and against True Freight in an amount not less than $1,016,639.88.

## II. FACTUAL BACKGROUND.

True Freight worked with GlobalTranz for several years under different iterations of Agent Services Agreements, the most recent of which was executed in October of 2014 (the "Agreement"). [Countercl. ¶ 6; Tessmer Decl. attached hereto as Exh. "A" at ¶ 5; the Agreement (with its accompanying Addendum) attached hereto as Exh. "B".] Under the Agreement, True Freight was to market GlobalTranz's shipping and transportation related services to potential customers and then direct those customers back to GlobalTranz so that their transportation and shipping needs could be met. [Countercl. ¶ 7; Exh. "A" at ¶ 6; Exh. "B" at Section 3.] The parties would then split the revenues from those customers. [Exh. "B" at Section 6.] The Agreement also prohibited True Freight from "back soliciting" GlobalTranz's customers to use competitor services and from divulging certain confidential or proprietary information to others. [Countercl. ¶ 8; Exh. "A" at ¶ 7; Exh. "B" at Sections 10 and 11.]

Over the course of many years, GlobalTranz found it increasingly difficult to work with True Freight because of Goldstein's unprofessional conduct and behavior as set forth more fully below. [Countercl. ¶ 9; Exh. "A" at ¶ 8.] Although GlobalTranz repeatedly went

out of its way to make things work and to appease True Freight's frequent and unreasonable demands, in early 2018, it finally became impossible for GlobalTranz to maintain a professional relationship with True Freight. [Countercl. ¶ 10; Exh. "A" at ¶ 9.]

True Freight's behavior and conduct (including a repeated failure to follow directions or alter that conduct) grew to an incurable and intolerable point and constituted a material breach of contract. [Countercl. ¶ 11; Exh. "A" at ¶ 10.] For example, True Freight repeatedly engaged in unconscionable and bullying conduct, including, among other things, by sending voluminous, targeted, and harassing communications to GlobalTranz despite being repeatedly asked to cease doing so. [Countercl. ¶ 12; Exh. "A" at ¶ 11.]

Indeed, True Freight – through Goldstein – has a long history of making unjustified and sensational demands on GlobalTranz and its employees for money, services, and special treatment to which he is not lawfully entitled. And he was abusive about it. [Countercl. ¶ 13; Exh. "A" at ¶ 12.] For nine years, members of GlobalTranz's team – good, decent folks trying their hardest to do their jobs and to do them well – were subjected to True Freight's harassing and offensive behavior. [Countercl. ¶ 14; Exh. "A" at ¶ 12.]

And often times, the things True Freight wanted were expressly at odds with the explicit terms of the Agreement (like to be able to force GlobalTranz to give credit to his objectively non-creditworthy clients or to force GlobalTranz into honoring his secret side promises (which themselves were breaches of the Agreement) to clients that GlobalTranz would no longer try to collect on unpaid invoices). [Countercl. ¶ 15; Exh. "A" at ¶ 13.]

Toward the end, Goldstein made almost daily threats of baseless legal action, called people names, ignored directions from GlobalTranz's management to alter his behavior (including his abusive and insulting e-mail practices), and began sending an onslaught of repetitive and harassing e-mails to GlobalTranz's entire executive team, including its CEO and CFO (again despite normal protocols and direction to cease and desist). [Countercl. ¶ 16; Exh. "A" at ¶ 14.]

In 2017, Goldstein began declaring (for the first time ever) that his prior business

partner in True Freight and fellow Agent for GlobalTranz – Micha Leinwand – was no longer a partner in True Freight and should therefore not have any rights under the Agreement, including access to True Freight's login within GlobalTranz's system. [Countercl. ¶ 17; Exh. "A" at ¶ 15.] When GlobalTranz repeatedly asked for direction on how to proceed and explained that it would need to maintain the status quo with respect to existing business relationships until either Mr. Goldstein or Mr. Leinwand demonstrated proper ownership of True Freight, Mr. Goldstein became enraged. [Countercl. ¶ 18; Exh. "A" at ¶ 16.]

Goldstein's e-mails became more erratic and threatening and his phone calls became more unhinged, repeatedly threatening to sue GlobalTranz merely for treating Mr. Leinwand exactly as Mr. Goldstein had instructed should be done by his word and conduct for years – i.e., as a business partner and someone with ownership rights in True Freight. [Countercl. ¶ 19; Exh. "A" at ¶ 17.] The Agreement expressly envisions that True Freight would perform under it in a "professional and workmanlike manner" – indeed True Freight represented and warranted that it would – but it failed to do so. [*See* Exh. "B" at Section 8.1.] The Agreement also explicitly defines a "Material Breach" to include violations by True Freight of its representations and warranties (including the representation that work would be conducted in a professional and workmanlike manner). [*See Id.* at Section 2.22(d) and 8.1.]

Goldstein's conduct and behavior – which goes to the very essence of True Freight's obligations under the Agreement – constituted a material breach of contract and effectively denied GlobalTranz's right to receive the benefits that were supposed to flow to it from the Agent Services Agreement. [Countercl. ¶ 21; Exh. "A" at ¶ 19.] Based on True Freight's material breaches of contract, GlobalTranz exercised its rights of termination under the Agreement and common law as of February 7, 2018. [Countercl. ¶ 22; Exh. "A" at ¶ 20.] Following termination of the Agreement, True Freight violated the Agreements' terms by wrongfully divulging GlobalTranz's confidential information to others, and in fact used GlobalTranz's confidential and proprietary information to solicit GlobalTranz's clients.

QB\62231695.1

This is a further breach of the Agreement.  [Countercl. ¶ 23; Exh. "A" at ¶ 21; *see also* Exh. "B" at Section 10 and 11.]

## III.     PROCEDURAL BACKGROUND.

True Freight filed a lawsuit in Arizona state court against GlobalTranz on April 5, 2018 arising out of GlobalTranz's (justified) decision to terminate the Agreement before its natural expiration. GlobalTranz timely removed the case to this Court on May 14, 2018. [Dkt. 1.]  On August 27, 2018, GlobalTranz filed an Answer and Counterclaim. [Dkt. 26.] After extended litigation and motion practice, which resulted in the filing of multiple iterations of the Complaint, True Freight's most recent legal counsel sought to withdraw from representing True Freight on November 1, 2019.[1] [Dkt. 73.]  The Court denied that motion without prejudice so that True Freight could address the issue of continued representation. [Dkt. 76.] On November 13, 2019, counsel for True Freight filed a renewed motion to withdraw, stating that continued representation would violate the Rules of Professional Conduct. [Dkt. 77.]  On December 2, 2019, the Court granted that motion. [Dkt. 79.]  The Court provided True Freight an additional two weeks to file a notice of new counsel or, alternatively, to show cause why True Freight's action against GlobalTranz should not be dismissed for failure to prosecute and failure to comply. [*Id.* at p. 2.]  On December 16, 2019, True Freight requested an extension until January 30, 2020, within which to obtain counsel. [Dkt. 80.]  The Court granted that request and also gave True Freight additional time within which to file a reply in support of its motion for class certification. [Dkt. 82.]  At that time, the Court advised True Freight that a failure to obtain counsel by January 30, 2020 might result, without further notice, in dismissal of True Freight's action against GlobalTranz. [*Id*. at p. 2.]

January 30th came and went, but True Freight never filed a notice of counsel. Accordingly, on February 5, 2020, the Court dismissed True Freight's claims (most recently constituted in the Second Amended Complaint) against GlobalTranz for failure to prosecute them, and for failure to comply with the Court' order to obtain counsel. [Dkt. 90.] The Court

---

[1] True Freight was originally represented in this case by Degnan Law, PLLC but that firm withdrew and was replaced by Morey Law, PLLC on March 7, 2019. [Dkt. 49.]

also ordered GlobalTranz to file a notice indicating how it wished to proceed on its counterclaims. [*Id.* at p. 4.] GlobalTranz did so on February 19, 2020, indicating that it wished to voluntarily dismiss its counterclaim for tortious interference with contract against True Freight and Joshua Goldstein in his personal capacity (Count Three of the Counterclaim), but seeking default against True Freight on GlobalTranz's two remaining counterclaims (i.e., breach of contract (Count One of the Counterclaim) and breach of the implied covenant (Count Two of the Counterclaim). [Dkt. 91.]

On March 4, 2020, the Court entered an Order (followed by an Amended Order which corrected a prior detail), which (1) dismissed without prejudice GlobalTranz's counterclaim for tortious interference with contract, (2) directed the Clerk of Court to enter default against True Freight on Counts One and Two of the Counterclaim, and (3) directed GlobalTranz to file and serve a motion for default judgment. [Dkt. 96.] Later on that same day, the Clerk of Court entered default against True Freight on Counts One and Two of the Counterclaim. [Dkt. 95.]

## IV.  LEGAL ARGUMENT.

### A.  DEFAULT JUDGMENT FACTORS

The decision to enter a default judgment falls squarely within this Court's discretion. *Benny v. Pipes*, 799 F.2d 489, 493 (9th Cir. 1986). The "general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977); *Visioneering Constr. v. U.S. Fidelity & Guar.*, 661 F.2d 119, 124 (9th Cir. 1981) ("Well pleaded allegations of the petition, including jurisdictional averments, are taken as admitted on a default judgment."); *Danning v. Lavine*, 572 F.2d 1386, 1389 (9th Cir. 1978) ("Upon entry of a default judgment, facts alleged to establish liability are binding upon the defaulting party, and those matters may not be relitigated on appeal."); *Zekelman Indus. Inc. v. Marker*, 2020 WL 1495210, at *1 (D. Ariz. Mar. 27, 2020) (holding that for purposes of ruling on a motion for default judgment, "the facts alleged in the complaint are assumed to be true . . .")

The Ninth Circuit has listed seven factors district courts may consider when exercising their discretion to enter default judgment. These factors include: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Applying these factors here, the Court should enter default judgment against True Freight.

<u>First</u>, the possibility of prejudice to GlobalTranz weighs in favor of judgment because True Freight's failure to hire legal counsel or present a defense entirely hamstrings GlobalTranz's ability to proceed to trial or otherwise resolve its remaining claims.  For many months now, in fact, GlobalTranz has waited in limbo for True Freight to comply with the Court's orders (and Ninth Circuit law) to hire new legal counsel. True Freight has failed to comply, and still to this day has not filed a notice of appearance of counsel. As the Court has pointed out, a company's refusal to comply with a court order to secure legal counsel amounts to a failure to "otherwise defend' the action pursuant to Rule 55(a).  If the Court does not enter judgment, there is every reason to believe that this case will continue indefinitely.  The prejudice to GlobalTranz is clear.

<u>Second</u>, GlobalTranz's claims, as supported by the uncontroverted attached declaration, are meritorious. Goldstein's unacceptable and abusive conduct and behavior – which conduct and behavior goes to the very essence of True Freight's obligations under the services-oriented Agreement that was to be performed in a professional and workmanlike manner – constituted a material breach of contract and effectively denied GlobalTranz's right to receive the reasonably expected benefits which were supposed to flow to it from the Agreement.  The law of contracts simply cannot be used to force people to maintain professional relationships, with those working on their behalf, who repeatedly engage in unconscionable and bullying conduct, including, among other things, by sending voluminous, targeted, and harassing communications despite being repeatedly asked to

cease doing so. Indeed, in a relationship-based industry like this one, acting in this way certainly is a "serious and substantial" issue that really "goes to the essence of the contract" and defeats GlobalTranz's "purpose in entering the contract," in the first place, thus constituting a material breach. *See* RAJI (Civil) Contract 9; *see also Foundation Dev. Corp. v. Loehmann's, Inc.*, 163 Ariz. 438, 445, 788 P.2d 1189, 1196 (1990); *ARA Mfg. Co. v. Pierce*, 86 Ariz. 136, 140, 341 P.2d 928, 931 (1959); *compare* Restatement (Second) of Agency § 380 (making clear that agents have a duty of good conduct and to refrain from acting "in such a way as to make continued friendly relations with the principal impossible"); *Kirchof v. Friedman*, 10 Ariz. App. 220, 222, 457 P.2d 760, 762 (1969) ("Willful disobedience which imparts a willful disregard of expressed or implied directions and a refusal to obey reasonable orders of the employer constitutes such a material breach [allowing for termination]."). These facts also demonstrate a breach of the implied covenant of good faith and fair dealing by Goldstein/True Freight, implied by law as a material term into every contract as though expressly stated in it. *See generally Bike Fashion Corp. v. Kramer*, 202 Ariz. 420, 423–24, ¶¶ 13-14, 46 P.3d 431, 434–35 (App. 2002).

As explained above, and in the attached declaration, Goldstein acted for years in a hostile, threatening, and abusive manner, and it eventually grew to an intolerable and incurable point, thus necessitating termination. [Countercl. ¶ 11; Exh. "A" at ¶ 10.] True Freight represented and warranted in the Agreement itself that it would perform its obligations in a professional and workmanlike manner, and True Freight Agreed that a failure to live up to that representation and warranty constituted a "material breach" of the Agreement. [*See* Exh."B" at Section 2.22(d) and 8.1.] These breaches, among others, and the resulting termination of the Agreement, damaged GlobalTranz. Judgment should be entered in GlobalTranz's favor.

Third, the Counterclaim is entirely sufficient. To state a claim for a breach of contract, a claimant must demonstrate the existence of a contract, breach, and resulting damages. *See, e.g.*, *E-Z Livin' Mobile Homes, Inc. v. Tommaney*, 27 Ariz. App. 11, 15, 550 P.2d 658, 662 (1976). GlobalTranz pled the existence of a contract (the Agreement), it outlined in detail

True Freight's breach of that contract (i.e., its unconscionable and hostile conduct, wrongful use of proprietary and confidential information, and improper back solicitation of GlobalTranz customers), and it set forth the damages that GlobalTranz suffered as a result of that breach (i.e., the loss of the benefit of the True Freight relationship). To state a claim for breach of the implied covenant of good faith and fair dealing, a claimant must demonstrate both the existence of a contract, and that the opposing party denied the claimant the reasonably expected benefits of that contract. *See Nolan v. Starlight Pines Homeowners Ass'n*, 216 Ariz. 482, 489, 167 P.3d 1277 (App. 2007). Again, and as set forth above, the Counterclaim clearly sets forth all of these elements. The Counterclaim is sufficient and Judgment should be entered for GlobalTranz.

Fourth, the sum of money at stake in this action also weighs in favor of judgment being entered. GlobalTranz's damages equal, and GlobalTranz therefore seeks to recover, the amounts it would have made from the True Freight relationship but for True Freight's material breaches of contract – i.e., the amounts GlobalTranz should have realized from the time of GlobalTranz's termination of the Agreement (resulting from true Freight's breaches) to the time when the Agreement would have otherwise terminated pursuant to their terms (a twenty-one month period). [Exh. "A" at ¶ 23.] This calculation (explained more thoroughly in Section C below) results in a total damages figure of $1,016,637.88. [*See id.* at ¶ 24.] In addition to being demonstrably accurate based on extensive documentation and records kept by GlobalTranz in the ordinary course of business, this sum is also entirely reasonable given the totality of the facts and circumstances. True Freight itself alleged in the Second Amended Complaint that "[o]ver the course of the parties' relationship, True Freight and GlobalTranz worked together to generate *millions* in profits." [SAC ¶ 76] [emphasis added.] More specifically, True Freight alleged that GlobalTranz brought in over $18,000,000 in revenue and over 3,500,000 in profit from its relationship with True Freight over the years and that "over the last year alone, [True Freight] produced over $3,198,000 in revenue and over $573,000 in profits for GlobalTranz." [SAC ¶¶ 118-119.] In short, the amounts sought by GlobalTranz in damages for Counts One and Two – only $1,016,637.88

– is both appropriate ***and*** less than True Freight itself has alleged GlobalTranz would have generated over the terminated twenty-one (21) months if the Agreement had continued in effect through its natural course.[2]  Judgment is appropriate in the amount requested.

<u>Fifth</u>, there is no dispute of material fact. The declaration attached hereto, along with the now established allegations in GlobalTranz's Counterclaim, clearly demonstrate True Freight's liability to GlobalTranz under Count One and Two. GlobalTranz was also prepared to call a half-dozen or more witnesses that were going to testify to True Freight's unacceptable and hostile conduct that precipitated termination of the Agreement.  [*See* Exh. "A" at ¶ 22.]  GlobalTranz would have used True Freight's own hostile e-mail messages to demonstrate these facts as well. [*Id.*] In contrast, True Freight would have had nothing but its own self-serving testimony to try to rebut the overwhelming evidence standing against it. Even more importantly, however, True Freight cannot as a matter of law dispute GlobalTranz's material facts and/or produce contradictory evidence (even if such evidence did exist – which it does not), because True Freight cannot appear before this Court without legal counsel, and True Freight has failed repeatedly to hire such counsel despite the Court's continued orders to do so. Thus, there is ***no*** apparent possibility of disputed material facts, and judgment should be entered for GlobalTranz.

<u>Sixth</u>, True Freight's default was ***not*** due to excusable neglect, and so the sixth factor also weighs in favor of judgment. True Freight is the Plaintiff in this case. It is therefore True Freight's responsibility to move this case forward. Instead, True Freight has, as a practical matter, entirely abandoned its case. It has been at least five months since True Freight first became aware that it would need to hire new legal counsel, and the Court has repeatedly ordered True Freight to do so. True Freight has refused to comply with the Court's orders. Instead, True Freight's principal, Joshua Goldstein, has repeatedly submitted lengthy filings on True Freight's behalf (even though he is not a lawyer) with no indication that a notice of counsel will ever be filed. The Court has been entirely reasonable and

---

[2] Importantly, ***True Freight itself*** sought ***from GlobalTranz*** "millions of dollars in damages in the form of lost commissions, profits, and reputational damage" in this case for the same termination of the same Agreement. [SAC ¶¶ 79.]  GlobalTranz seeks to recover a mere fraction of that.

10

QB\62231695.1

generous with its orders in this regard, but True Freight has not fixed the issue. This case should not be allowed to linger on forever. Judgment should be entered in GlobalTranz's favor.

Seventh, the policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits should not preclude entry of default judgment in this case. While it would be ideal for every case to be decided on its merits, sometimes circumstances make such an ideal outcome not possible. This case has just such circumstances. GlobalTranz and the Court cannot be expected to remain trapped forever by True Freight's failure to obey the Court's order and the law by hiring new counsel. There is also strong policy underlying the Federal Rules that cases should be resolved expeditiously. *See* Fed. R. Civ. P. 1 (explaining that the Federal Rules of Civil Procedure should be "construed, administered, and employed by the Court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.") Yet this case has been languishing with no movement for nearly half-a-year.  Entry of judgment is appropriate.

### B.   LEGAL AUTHORITY

GlobalTranz already provided, in Section IV(A) above, the "legal authority that sets out the elements of the causes of action upon which GlobalTranz seeks judgment," but for the Court's convenience, it will do so again. The two remaining claims upon which GlobalTranz seeks recovery are breach of contract (Count One) and breach of the implied covenant of good faith and fair dealing (Count Two). A claim for a breach of contract requires a claimant to demonstrate the existence of a contract, breach of that contract, and resulting damages.  *See, e.g.*, *E-Z Livin' Mobile Homes, Inc. v. Tommaney*, 27 Ariz. App. 11, 15, 550 P.2d 658, 662 (1976).  A claim for breach of the implied covenant of good faith and fair dealing requires a claimant to demonstrate the existence of an agreement, and that the opposing party denied the claimant the reasonably expected benefits of that agreement. *Nolan v. Starlight Pines Homeowners Ass'n*, 216 Ariz. 482, 489, 167 P.3d 1277 (App. 2007). GlobalTranz has demonstrated that these claims were validly stated, and that their elements have been proven by uncontroverted evidence.

## C.     **LEGAL BASIS FOR DAMAGES REQUESTED**

As mentioned above, GlobalTranz's damages equal, <u>at least</u>, the amounts it would have made from the True Freight relationship but for True Freight's material breaches of contract – i.e., the amounts GlobalTranz should have realized from the time of GlobalTranz's termination of the Agreement (resulting from True Freight's breaches) to the time when the Agreement would have otherwise terminated pursuant to its terms.

Specifically, True Freight's breaches caused GlobalTranz to terminate the Agreement on February 7, 2018. The Agreement would have expired pursuant to its own terms on October 27, 2019. Thus, the relationship between these companies terminated approximately twenty-one months early. During the twelve months prior to the termination of the Agreement (i.e., from February 1, 2017 through February 7, 2018), GlobalTranz made $580,935.93 from its relationship with True Freight. [*See* Exh. "A" at ¶ 25.]

Extrapolating from that data, and applying it moving forward to the twenty-one months that should have been a successful contractual relationship (had termination never happened), GlobalTranz would have made not less than $1,016,637.88 but for True Freights material breaches of contracts. [*Id.* at ¶ 25.] The documents and other evidentiary material on which GlobalTranz bases its computation include historical data on earnings and commissions resulting from the GlobalTranz and True Freight relationship. [*Id.* at ¶ 24.] That data is included with the attached declaration. This is the appropriate measure of damages.[3]

---

[3] GlobalTranz is also entitled to recover the damages it incurred because of True Freight's breaches of its confidentiality obligations under the Agreement and True Freight's wrongful back-solicitation of GlobalTranz customers. However, because these amounts – unlike the lost profits described above – are difficult to calculate, GlobalTranz seeks only to recover nominal damages in the amount of $1.00 each for these particular breaches (bringing the $1,016,63**7**.88 total described above to $1,016,63**9**.88).

Indeed, even if the Court finds GlobalTranz's damages calculations to be generally insufficient (which it should not), then the Court should, at a minimum, still award GlobalTranz nominal damages for both Counts One and Two of the Counterclaim. *Firetrace USA, LLC v. Jesclard*, 2010 WL 3523067, at *2 (D. Ariz. Sept. 3, 2010) (explaining that nominal damages can be properly awarded in contract actions where "actual damages are slight or difficult to calculate."); *see also Hale v. Brown,* 84 Ariz. 61, 71-72,

QB\62231695.1

In Arizona, ordinary contract damages are the proper measure of damages for a breach of contract **or** a breach of the covenant of good faith theory. *Dairymen of Ariz. v. Schugg*, 212 Ariz. 133, 137, ¶ 15, 128 P.3d 756, 760 (App.2006) (*citing Enyart v. Transamerica,* 195 Ariz. 71, 76, 985 P.2d 556, 561 (App. 1998)) (holding that for breach of implied covenant of good faith and fair dealing, measurement of damages is limited to contract damages). The proper measure of damages for these theories is the amount of money required to place the party harmed in the position it would have been in if the contract had been performed considering, among other things, the profit that it would have received had the contract been performed.  Arizona Pattern Jury Instructions – Civil 17 (5th ed.); *see also* Restatement (Second) of Contracts § 347 (1981); *N. Arizona Gas Serv., Inc. v. Petrolane Transp., Inc.*, 145 Ariz. 467, 478, 702 P.2d 696, 707 (App. 1984) ("Damages recoverable in a contract action are those proximately caused by the breach.")

To recover lost profits in a contract case, a claimant must show, with reasonable certainty, that profits were lost as a result of the breach. *See Rancho Pescado, Inc. v. Northwestern Mutual Life Ins. Co.,* 140 Ariz. 174, 680 P.2d 1235 (App. 1984); *see also Felder v. Physiotherapy Associates*, 215 Ariz. 154, 162, ¶ 36, 158 P.3d 877, 885 (App. 2007). Then, "[o]nce the fact of lost profits is established . . . [Arizona] courts have not been as strict about the amount. . . [Indeed,] where it can be proven that profits were lost, doubts as to the extent of the injury should be resolved in favor of the innocent plaintiff and against the wrongdoer." *Felder*, 215 Ariz. at 164, ¶ 47, 158 P.3d at 887 (citations omitted). In fact, once it has been established that the *fact* of lost profits was reasonably certain, any reasonable basis for determining the *amount* of the probable profits lost is acceptable. *Rancho Pescado*, 140 Ariz. at 184, 680 P.2d at 1245; *Gilmore v. Cohen,* 95 Ariz. 34, 36, 386 P.2d 81, 82 (1963) (explaining that in lost profits cases, there is a

---

323 P.2d 955, 962 (1958) (nominal damages appropriate when no evidence is given of any particular amount of loss caused by breach of contract) (*quoting Larson v. Chase,* 47 Minn. 307, 50 N.W. 238, 239 (Minn.1891)); *Edwards v. Anaconda Co.,* 115 Ariz. 313, 317, 565 P.2d 190, 194 (App.1977) (nominal damages appropriate when party prevailed on breach of contract claim but damages were indefinite and could not be estimated accurately).

QB\62231695.1

"requirement that the plaintiff's evidence provide *some basis* for estimating his loss.") (emphasis added). Nevertheless, such damages (i.e., lost profits) must still be stablished with reasonable certainty, which can be accomplished through the examination of things like books of account, records of previous transactions, and/or profit history. *See Felder*, 215 Ariz. at 164, ¶ 47, 158 P.3d at 887.

As discussed previously, True Freight itself has alleged that from 2009 until 2018, GlobalTranz and True Freight had a profitable (if not always pleasant) relationship, which relationship, according to True Freight itself, generated millions in profits [SAC ¶ 76.] and, "over the last year alone, [True Freight] produced over $3,198,000 in revenue and over $573,000 in profits for GlobalTranz." [SAC ¶¶ 118-119.] As noted above, GlobalTranz reviewed historical data and source documents on earnings and commissions for its relationship with True Freight and concluded that in the twelve months prior to termination of the Agreement, GlobalTranz received approximately $580,935.93 from that relationship. [*See* Exh. "A" at ¶ 24.] Again, these are *actual* numbers from this *actual* relationship from the year immediately preceding the breach and termination. If True Freight had not materially breached the Agreement, thus causing GlobalTranz to terminate the Agreement, the parties' contractual relationship would have continued for an additional twenty-one (21) months before expiring pursuant to the Agreement's terms. [*Id.* at ¶ 25.] Applying this twelve-month, pre-termination history to the twenty-one months that followed termination, there is every reason to believe that GlobalTranz would have received not less than $1,016,637.88 but for True Freights material breaches of contracts. [*Id.*] Put differently, $1,016,637.88 (plus two dollars in nominal damages) is the amount of money needed to put GlobalTranz in the position it would have been in if the contract had been performed by True Freight. [*Id.* at ¶ 26.] Based on a historical lookback, it is reasonable to assume that at least these amounts would have been realized by GlobalTranz except for True Freight's breach, that these losses are the direct and natural consequences of True Freight's breach, and that these amounts can be (and have been) shown with reasonable certainty. [*Id.* at ¶ 27.] GlobalTranz is therefore entitled to recover them.

As described above, GlobalTranz is also entitled to two dollars in nominal damages associated with certain of True Freight's breaches that are less easy to calculate – i.e., one dollar for True Freight's improper breaches of certain confidentiality provisions and one dollar for True Freight's wrongful back solicitation of GlobalTranz customers. Judgement should therefore be entered in favor of GlobalTranz for a total of $1,016,639.88

## V.  CONCLUSION

For the reasons stated above, GlobalTranz respectfully requests the Court to enter a judgment by default against True Freight in the form of the proposed Order of Default Judgment submitted herewith.

RESPECTFULLY SUBMITTED this 3rd day of April, 2020.

QUARLES & BRADY LLP
Renaissance One
Two North Central Avenue
Phoenix, AZ  85004-2391

By */s/ Michael S. Catlett*
    C. Bradley Vynalek
    Michael S. Catlett
    Benjamin C. Nielsen

*Attorneys for Defendant GlobalTranz Enterprises, Inc.*

15

QB\62231695.1

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 3, 2020, a true copy of the foregoing document was filed with the ECF system and will be electronically sent to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to any non-registered participants at the following addresses:

True Freight Logistics LLC
228 W. Stanton Ct. W.
Buffalo Grove, IL 60089

Joshua Goldstein
Kalanit St. 41
Mevaseret Zion 90805
Israel

                                                                          */s/ Sandra L. Moore*

QB\62231695.1